William SAMMONS, Appellant,

v.

**CIVIL SERVICE COMMISSION OF CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1996.

Decided March 12, 1996.

Reargument Denied April 26, 1996.

Ira B. Shrager, for Appellant.

Martin G. Malloy, for Appellee.

Before FRIEDMAN and KELLEY, JJ., and MIRARCHI, Senior Judge.

FRIEDMAN, Judge.

William Sammons (Employee) appeals from an order of the Philadelphia County Court of Common Pleas (trial court) denying Employee's appeal from a decision of the Civil Service Commission of the City of Philadelphia (Commission) which held that Employee must return to active duty work effective March 5, 1990, thereby effectively terminating Employee's injured-on-duty (I.O.D.) benefits.

On November 21, 1989, Employee, a veteran Detective with over 20 years of service for the City of Philadelphia Police Department (Employer), injured his coccyx bone in the course and scope of his employment when he fell backwards off of a chair and struck his lower back on the floor. (R.R. at 32a.) Employee was treated at Northeastern Hospital of Pennsylvania, and received I.O.D. benefits from November 21, 1989 through February 20, 1990, when he was placed on limited duty.[1] (R.R. at 32a.)

On March 5, 1990, the Municipal Employees' Compensation Clinic (Compensation Clinic) ordered Employee back to active duty. (R.R. at 31a.) However, Employee refused to return to work and exercised his option to file an appeal with the Commission pursuant to Philadelphia Civil Service Regulation 32.11,[2] charging his absence against accrued sick leave. (R.R. at 25a.)

1. There is some dispute as to whether Employee merely injured his coccyx or actually fractured it. However, one of Employer's own physicians diagnosed Employee with a "fractured coccyx." *See* R.R. at 36a. In either case, Employer acknowledged a service-connected injury to Employee's coccyx of a degree serious enough to render him disabled and to warrant payment of I.O.D. benefits.

2. Civil Service Regulation 32.11 provides:
 A Regulation 32 employee who is instructed by the Municipal Employees' Compensation Clinic to return to work, either on a full-active or limited duty basis, and does not do so, is being insubordinate, even if he feels he is physically unable to return to work. In such a situation, however, he may appeal to the Civil Service Commission. Should the employee file an appeal with the Civil Service Commission within thirty (30) days of such refusal to return to work, his absence from work for the period between the date of filing such appeal and the date a decision thereon is entered by the Commission shall be charged against accrued sick leave, vacation leave or holiday compensatory time. In the event that accrued sick and vacation leave and compensatory time are utilized and exhausted during the period prior to the Commission's decision, he shall thereafter be carried without pay. A Commission decision adverse to the employee will entitle the City to

On July 11, 1990, a hearing was held before the Commission. Employee presented the only testimonial evidence; however, Employer and Employee both presented documentary medical evidence regarding Employee's ability to return to active duty. Employer submitted Northeastern Hospital emergency room records, which indicated tenderness in Employee's lower back and coccyx, (Employer's exh. D–1), as well as Northeastern Hospital treatment records, which indicated that Employee might have a prostate problem or calcium deposits in the urethral tract.[3] (Employer's exhs., D–2, D–3.) Employer also submitted an x-ray examination of Employee's coccyx, which concluded that "there is no evidence of fracture and no compression of any of the bodies." (Employer's exh. D–7.) Based on the foregoing medical evidence, as well as a physical examination she conducted on March 1, 1990, Lorraine Gutowicz, M.D., of the Compensation Clinic determined that Employee was capable of returning to active duty effective March 5, 1990. (Employer's exh. D–9.)

In opposition, Employee introduced a bone scan indicating a "tiny area of increased activity in the region of the lower coccyx ... [that] could be related to an acute fracture or infection in the region of the coccyx." (Employee's exh. A–1.) Employee also introduced letters written by John L. Sbarbaro, Jr., M.D., an orthopedic surgeon, and Philip E. Ingaglio, M.D., Employee's private physician, regarding Employee's condition. Dr. Sbarbaro disagreed with Dr. Gutowicz's determination that Employee was fit to return to active duty, opining that Employee had "severe coccydynia attributable to [the work accident] of 11/21/89," and therefore, that "he

cannot work because he cannot sit, stand or walk." (Employee's exh. A–2.) Dr. Ingaglio agreed with Dr. Sbarbaro's analysis, noting that Employee's coccyx, still tender to light touch, was susceptible to reinjury; thus, Dr. Ingaglio concurred that Employee was still not a candidate for full work duties.[4] (Employee's exh. A–3.)

After reviewing all of the relevant medical evidence, the Commission found that Employer had sustained its burden of proof, stating that:

> There is no specific, objective medical evidence to corroborate [Employee's] position that he has a fracture in the coccyx area, or that he continues to experience any pain in the lower back region. Dr. Sbarbaro referred to an x-ray but that report was not submitted or produced. The only reference to a possible fracture is in the presumptive diagnosis, and the bone scan (Exhibit A–1) refers to a possible infection. Moreover, the x-rays indicate possible kidney stones which would explain some of [Employee's] episodes of pain. Finally, [Employee] is still a relatively young person who was physically able to drive an automobile more than 1,000 miles to Florida for a vacation.

(R.R. at 32a–33a.) Accordingly, the Commission denied Employee's appeal, and ordered Employee to return to active duty. On appeal, the trial court, without taking additional evidence, affirmed.

■■■■ On appeal to this court,[5] Employee argues that the Commission committed an error of law by basing its decision to terminate Employee's I.O.D. benefits, at least in part, on its conclusion that "there is no spe-

recover wages paid by the City for sick leave so used retroactive to the date of the appeal.

3. According to Employer, the treatment records indicating that Employee had a possible prostate or kidney stone problem were significant because it was that condition, rather than any coccyx injury, that was responsible for the pain that Employee was allegedly suffering. (R.R. at 5a–6a.)

4. Both doctors Sbarbaro and Ingaglio agreed that the x-rays and bone scan of Employee's lower back revealed that Employee had not merely injured his coccyx but had, in fact, suf-

fered two chip fractures in the first bony segment of the coccyx. (Employee's exhs., A–2, A–3.)

5. Our scope of review where the trial court has limited itself to the record before the Commission is to determine whether the Commission's order violated Employee's constitutional rights, whether the Commission manifestly abused its discretion or committed an error of law, or whether the Commission's decision was not based upon substantial evidence. *Haygood v. Civil Service Commission,* 133 Pa.Cmwlth. 517, 576 A.2d 1184 (1990), *appeal granted,* 527 Pa. 605, 589 A.2d 694 (1991), *appeal dismissed,* 529 Pa. 447, 605 A.2d 306 (1992).

cific, objective medical evidence to corroborate [Employee's] position that he has a fracture in the coccyx area...." (R.R. at 32a.) Employee contends that the issue of whether Employee had, in fact, sustained a fractured coccyx as a result of his service-connected accident had already been determined by Employer, as evidenced by its decision to grant Employee I.O.D. benefits;[6] therefore, the only issue properly remaining before the Commission was whether Employee's service-connected disability had ended so as to allow him to return to active duty. We agree.[7]

 Civil Service Regulation 32 is similar in intent and form to the Pennsylvania Workers' Compensation Act (Act),[8] and we have held that the principles enunciated in interpreting that Act will apply to Regulation 32 where similar substantive issues are involved. *Ciccimaro v. City of Philadelphia,* 110 Pa.Cmwlth. 574, 532 A.2d 1255 (1987); *Smith v. Philadelphia Civil Service Commission,* 53 Pa.Cmwlth. 164, 417 A.2d 810 (1980). Applying the relevant precedents established under workers' compensation law, once an employer has issued a notice of compensation payable or agreed to pay benefits, the employer has admitted that an employee's inju-

ry arose in the course of employment and is related thereto, provided that the employer has had a full opportunity to investigate the circumstances surrounding the employee's injury before agreeing to pay compensation. *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.),* 502 Pa. 178, 465 A.2d 969 (1983). Here, Employer issued the equivalent of a notice of compensation payable or, at the very least, an agreement to pay benefits when it placed Employee on "injured-on-duty" status.

Because Employer had an opportunity to, and in fact did, investigate the nature and existence of Employee's disability before placing Employee on "injured-on-duty" status,[9] Employer admitted both that Employee's coccyx injury was service-connected and that it rendered Employee disabled. *Beissel.* Thus, neither the existence of the injury nor its causation were at issue in the proceeding before the Commission, and Employer may not now, under the guise of a proceeding analogous to a termination petition, come into court and contradict precisely that which it admitted when it granted Employee I.O.D. benefits, namely, that Employee's disability at the time Employer accepted liability was caused by a fractured coccyx. *Id.*

---

6. It is unclear from the record whether Employer actually issued a formal, written determination of Employee's status; however, as recognized by the Commission in its decision, it is undisputed that Employee was accorded I.O.D. benefits from the date of his injury, November 21, 1989, through February 20, 1990.

7. Curiously, however, Employee also argues that the Commission improperly placed the burden on *Employer* to prove that Employee's disability has ended or has been reduced and that Employee, therefore, is capable of returning to work. According to Employee, the burden should have been *his* to prove that his disability continues and that, therefore, he is *in*capable of returning to work.

While it is true that an employee seeking to *gain* I.O.D. benefits pursuant to Regulation 32 has the burden of proving that a disability is present and that it is service-connected, *Civil Service Commission v. DeBerry,* 137 Pa.Cmwlth. 436, 586 A.2d 519 (1991), an employee seeking to *retain* benefits has no similar burden. *Ciccimaro v. City of Philadelphia,* 110 Pa.Cmwlth. 574, 532 A.2d 1255 (1987). Rather, an employer seeking to terminate benefits bears the burden of proving that an employee's disability has ended

or has been reduced. *Ciccimaro.* In addition, where a reduction of disability is at issue, the employer must also prove that there is work available to the employee that he is capable of performing. *Id.*

Employee's argument, thus, is not only an incorrect statement of the law, but is also a perplexing adversary stance. Had the Commission, in fact, *improperly* placed the burden of proof on Employer, Employee would have been relieved of satisfying a burden that he *claims* was rightfully his. That was not the case here, however; as is evident from its opinion, the Commission, quite *properly,* placed the burden of proof on Employer. *See* R.R. at 32a.

8. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

9. Under Regulation 32, an employee allegedly injured on duty must be examined at the Compensation Clinic *before* Employer will make a determination whether to grant the employee I.O.D. benefits. Here, Dr. Gutowicz of the Compensation Clinic examined Employee and determined that he had sustained a service-connected injury to his coccyx which warranted the payment of I.O.D. benefits.

■ As noted previously, under Civil Service Regulation 32, as well as under section 413 of the Act,[10] 77 P.S. § 772, an employer bears the burden of proving that an employee's disability has ended or has been reduced. *See supra* footnote 7. Where, as here, an employer has issued a notice of compensation payable or made an agreement to pay I.O.D. benefits, the employer can only satisfy its burden by showing that an employee's disability has changed *after* the date of the notice of compensation payable or the agreement, in this case November 21, 1989. *Beissel.* Accordingly, insofar as Employer argued, and the Commission found, not that Employee's disability has terminated since November 21, 1989, but that Employee's disability never existed, we find this an improper basis for the Commission's decision terminating Employee's benefits.[11]

Although termination cannot rest on the non-existence of Employee's coccyx injury,

Employer may have still satisfied its burden of proof if it offered independent grounds to support the Commission's determination; thus, we now turn our attention to the alternative bases for the Commission's decision to terminate Employee's I.O.D. benefits.

■ The issue of the fracture aside, the Commission found that there was no evidence that Employee "continues to experience any pain in the lower back region."[12] However, Employer presented no competent evidence to substantiate or warrant this finding. In fact, with the exception of Employee's own testimony that his great discomfort compelled him to fly back from Florida rather than drive, (R.R. at 22a–24a), an examination of the record reveals that the only evidence either of the parties adduced at the hearing before the Commission was hearsay.[13]

---

10. Section 413 of the Act provides, in relevant part, that:

A referee designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its referee, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased....

77 P.S. § 772.

11. The Commission, noting that the "only reference to a possible fracture is in the presumptive diagnosis," (R.R. at 32a), appears to have placed a great deal of emphasis, in reaching its decision to terminate Employee's benefits, on the fact that Employee may not have actually fractured his coccyx when he fell from his chair.

Even if this were not improper, contrary to our conclusion in the foregoing discussion, the Commission's reliance on the alleged non-existence of a fracture is misplaced; if Employee sustained a mere coccyx "injury" and suffered disabling pain as a result, Employee would still be entitled to I.O.D. benefits until such time as Employer could prove that Employee's pain had disappeared or subsided and he was able to return to work. In other words, the issue of whether Employee fractured his coccyx is not dispositive here; simply because Employee might not have sustained a fracture does not mean that he does not suffer from disabling pain. On the other hand, simply because Employee might have sustained a fracture does not mean that he continues to suffer from disabling pain.

12. In making this finding, the Commission seemingly relies solely on the fact that Employee "was physically able to drive an automobile more than 1,000 miles to Florida for a vacation." (R.R. at 32a–33a.)

13. As noted earlier, with the exception of Employee's testimony, the only evidence either of the parties introduced at the hearing before the Commission was documentary evidence in the form of medical records and reports.

Although hospital and medical records are admissible into evidence as exceptions to the hearsay rule under the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108, they must be properly authenticated by "the custodian or other qualified witness...." 42 Pa.C.S. § 6108(b). Here, Employer, who bore the burden of proof, neglected to authenticate, in accordance with section 6108(b), any of the documents it submitted to the Commission.

Moreover, even if Employer had properly authenticated the medical records and reports it sought to introduce, such records and reports would only be admissible to prove facts relating to, for example, hospitalization or treatment, treatment methods prescribed or symptoms described to the physician by the patient for the purpose of receiving medical advice. *See Morris v. Moss*, 290 Pa.Superior Ct. 587, 435 A.2d 184 (1981); *Commonwealth v. Seville*, 266 Pa.Superior Ct. 587, 405 A.2d 1262 (1979). However, such records and reports would not be admissible to prove opinions, diagnoses and conclusions contained therein, *Morris;* therefore, Employer could not use the reports to show that Employee did not fracture his coccyx, that he suffered from kidney stones, that he no longer experienced any

In *Walker v. Unemployment Compensation Board of Review,* 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976), we held that hearsay evidence which is properly objected to is incompetent to support an agency finding. We also held that hearsay evidence which is not objected to, as is the case here, will be given its natural probative effect and may support an agency finding if there is any competent evidence in the record to corroborate it; a finding based on hearsay alone is insufficient. *Id.; see also Wheeler v. Civil Service Commission,* 656 A.2d 572 (Pa. Cmwlth.1995).

 Here, the parties essentially litigated the case "on paper;" [14] therefore, the medical evidence Employer introduced, though not objected to, is not corroborated by any competent evidence in the record. Because the Commission's finding that Employee no longer suffers from disabling pain, based on hearsay alone, is without support, Employer has not met its burden of proof, and the Commission's decision should be reversed.[15] *See Wheeler.*[16]

Accordingly, we reverse the trial court's order which affirmed the Commission's decision denying Employee's appeal and ordering Employee to return to full active duty.

### ORDER

AND NOW, this 12th day of March, 1996, the order of the Court of Common Pleas of Philadelphia County, dated June 4, 1992, is reversed.

pain or that he was fully recovered and able to return to active duty.

**14.** *See Malloy v. Civil Service Commission of City of Philadelphia,* 165 Pa.Cmwlth. 487, 645 A.2d 434 (1994). In *Malloy,* we held that, because the parties essentially presented their cases "on paper," the Commission's decision was inadequate for our review. Consequently, we remanded the case and afforded the parties on remand an opportunity to adduce non-hearsay evidence before the Commission.

**15.** Based on the foregoing, we also reject the Commission's final basis for finding that Employee's disability had terminated: "the x-rays indicate possible kidney stones which would explain some of [Employee's] episodes of pain." (R.R. at 32a.)

Essentially, what Employer argued, and the Commission found, was that, even if Employee continued to experience pain, it was not caused by his service-connected coccyx injury. We note, however, that where an employer is seeking to terminate benefits on the grounds that an employee's disability is no longer service-connected, the burden is on the employer to prove that an independent cause of the employee's disability arose *after* the employer agreed to pay the employee benefits, just as the burden is on an employer to prove that an employee's disability has ended *after* the employer agreed to pay the employee benefits. *Beissel.* Again, Employer presented no competent evidence to substantiate or warrant this finding.

**16.** In *Wheeler,* we warned that a party who chooses to rely on hearsay evidence as proof of its claims will suffer the consequences of any such strategy. *Id.*