**CITY OF PHILADELPHIA, Appellant,**

v.

**CIVIL SERVICE COMMISSION OF THE CITY OF PHILADELPHIA and Howard Ryder.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 17, 1998.

Decided May 22, 1998.

William C. McGovern, Philadelphia, for appellant.

W. Michael Mulvey, Philadelphia, for appellee, Howard Ryder.

Before PELLEGRINI and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) affirming the order of the Civil Service Commission (Commission) awarding civil service benefits to Officer Howard Ryder (Ryder) as a result of a work-related psychological disability.

Ryder was a 26–year veteran of the City of Philadelphia police force, who, throughout his career, was assigned only to the 7th Police District. On May 4, 1996, Ryder was alone in his patrol car when he received a radio call of a "man with a gun." Ryder was the first officer to arrive and waited outside for back-up units to arrive. However, upon hearing a woman screaming inside the house that her son had a gun, he entered the house alone, with his service weapon drawn. Ryder indicated to the woman to go into the kitchen but the woman's mother, who was disabled, could not be moved off the couch into another room. Ryder heard the male suspect indicate that he had a gun and was quickly confronted by the suspect who was brandishing an AR–15 semi-automatic rifle, pointed at Ryder and the two women. Ryder then pointed his weapon at the suspect and ordered him to put down his weapon. The suspect refused and the standoff continued for approximately five to six minutes. The suspect fled back up the stairs of the home and Ryder was able to get the women into the kitchen and notify police dispatchers of the situation. When the suspect came back down the stairs, Ryder was able to subdue him, remove him from the house and place the suspect into the back of his police cruiser. Back-up units then arrived approximately 12 minutes after the initial call. The weapon

used by the suspect was later found fully loaded with the safety off.

Subsequently, Ryder became angry when he learned that the charges against the suspect had been dropped and he was referred to the Employees Assistance Program (EAP), where a detective told him that there would be an attempt to have charges against the suspect reinstated. Upon returning to work on July 3, 1996, having had some previously scheduled surgery, Ryder was informed that he was being transferred to the 39th District, the first time in his 26 years on the force that he was assigned to a district other than the 7th. On his first shift in the new district, Ryder began to experience severe anxiety and stress from answering routine police calls, feeling that either he would be killed or have to kill somebody so he reported off as injured-on-duty and did not return to work. Following this incident, he was referred by EAP to a psychologist, Dr. Paul DiKun, who diagnosed Ryder as having post-traumatic stress disorder and authorized his return to work, but in a capacity other than as a regular patrol officer.

After being told that he would not be allowed to return to work in any capacity until he was examined by a City physician, Ryder underwent an evaluation by Dr. Julie Kessel, who concurred with Dr. DiKun's diagnosis of post-traumatic stress disorder and also recommended that he not return to work as a patrol officer. However, his "injured-on-duty" status was rejected because the police department considered his psychological injury not service connected. Pursuant to Civil Service Regulation 32.112 (Regulation 32),[1] Ryder appealed that determination to the Commission.

Before the Commission, Ryder testified about the May 4th incident and the subsequent events, including his transfer from the 7th to the 39th Police District. Dr. DiKun's report was introduced stating that Ryder was experiencing post-traumatic stress disorder directly related to the May 4th standoff and that he was not physically capable of returning to active duty as a patrol officer.

In support of Ryder's position that the event was extraordinary, Officer John Finor, a 16-year veteran of the Firearm Identification Unit, stated that the weapon used by the suspect was not rare but also was not common. He further testified that he could not recall an instance where an officer was involved in a one-on-one standoff with another individual with the type of semi-automatic rifle in this case.

Also testifying was Lt. Daniel Arvington, who stated that on the night of May 4th, Ryder appeared to be "quite shook up." He also stated that the situation experienced by Ryder on May 4th was an unusual situation given the type of weapon pointed at Ryder and the fact that Ryder was alone for the duration of the incident. He further testified that this was the first "triple assist"[2] that he has heard of in his four years in the 7th District.

In opposition to Ryder's claim, the City presented the testimony of Dr. Kessel. She testified that as a result of Ryder's testimony before the Commission regarding his transfer, she had changed her diagnosis from post-traumatic stress disorder to an "adjustment disorder" triggered both by his transfer and the May 4, 1996 event, although noting that the standoff substantially contributed to the development of his anxiety disorder. As a reason for her change in diagnosis, she explained that the anxiety symptoms did not develop until after Ryder's transfer rather than shortly after the May 4th standoff. She concluded that she was unable to state within a reasonable degree of medical

1. Regulation 32.121 provides:
   The following employees may appeal to the Civil Service Commission from an action of their appointing authority or the Personnel Director depriving them of more than ten (10) days' benefit under this Regulation, provided that such appeal is filed with the Commission within fifteen (15) days of receipt by the employee of written notice of the action complained of:

   Any employee aggrieved by a finding as to the existence, nature or service-connection of the employee's disability.

2. A "triple assist" is a city-wide call for help used when there is an officer in distress, that differs from a normal situation in which a call is usually made only to the officers of that particular district.

certainty that the transfer alone would have caused his symptoms, but she was of the opinion that the May 4th standoff alone would not have caused his condition. Nonetheless, she still recommended that Ryder return to work in a restricted-duty capacity.

Lt. Martin O'Donnell, an instructor at the Police Academy, testified that a police officer confronting an armed individual was not beyond what a police officer would anticipate to encounter. He also stated that while an officer cannot be trained to handle every specific situation that they may incur, they are trained to handle various situations responding to a man with a gun. He stated that while it is not recommended that an officer face an armed suspect alone, it may be necessary if a civilian is in danger. Although he was not able to state whether Ryder's confrontation was unusual, he felt that such incidents were happening more frequently. Lt. Edward Nolan of the Internal Affairs Shooting Team also testified that incidents such as the one that occurred on May 4, 1996 are occurring with increasing frequency, and that a triple assist can be a daily occurrence in Philadelphia, depending on the manpower available.

The Commission sustained Ryder's appeal reasoning that Ryder's psychological condition was caused by actual objective abnormal working conditions and ordered that Ryder be reinstated to active duty after being evaluated again at a medical facility of the City's choice. The City appealed to the trial court, which affirmed, holding that there was substantial evidence to support the Commission's finding that Ryder suffered a psychological injury as a result of the May 4, 1996 incident. This appeal followed.[3]

█ An employee seeking to gain injured-on-duty benefits pursuant to Regulation 32 has the burden of proving that a disability is present and that it is service-connected. *Civil Service Commission v. DeBerry,* 137

Pa.Cmwlth. 436, 586 A.2d 519 (1991). Because it is similar in intent and form to the Pennsylvania Workers' Compensation Act (Act),[4] we have held that the principles enunciated in interpreting that Act would apply to Regulation 32 where similar substantive issues are involved. *Sammons v. Civil Service Commission of City of Philadelphia,* 673 A.2d 998 (Pa.Cmwlth.1996); *Ciccimaro v. City of Philadelphia,* 110 Pa.Cmwlth. 574, 532 A.2d 1255 (1987).

The City contends that the trial court erred in concluding that Ryder was subjected to abnormal working conditions because, for the urban police officer, the May 4, 1996 confrontation could not be considered abnormal. It argues that because the job of a police officer is inherently highly stressful, it is to be expected that a police officer might encounter the same situation faced by Ryder even though it is not common. Although the May 4, 1996 confrontation is not a routine event for Philadelphia police officers, the City contends nonetheless that it is not so outside the realm of possibility to be considered an abnormal working condition.

█ To recover for a mental-mental injury, the claimant must prove either: (1) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time, or (2) that abnormal working conditions over a longer period of time caused a psychiatric injury. *Hershey Chocolate Co. v. Workmen's Compensation Appeal Board (Lasher),* 546 Pa. 27, 682 A.2d 1257 (1996). Under either prong, to recover for a psychological injury caused by a mental stimulus, Ryder must prove by objective evidence that he has a psychiatric injury and that such injury is other than a subjective reaction to normal working conditions. *Id.* Furthermore, psychic injury cases are fact specific and are to be considered in the context of the specific

---

3. Our scope of review where the trial court has limited itself to the record before the Commission is to determine whether the Commission's order violated Employee's constitutional rights, whether the Commission manifestly abused its discretion or committed an error of law, or whether the Commission's decision was not based upon substantial evidence. *Haygood v.*

*Civil Service Commission,* 133 Pa.Cmwlth. 517, 576 A.2d 1184 (1990), *appeal granted,* 527 Pa. 605, 589 A.2d 694 (1991), *appeal dismissed,* 529 Pa. 447, 605 A.2d 306 (1992).

4. Act of June 2, 1915, P.L. 736, *as amended* 77 P.S. §§ 1–1041.4; 2501–2626.

employment. *Id.*[5] While we agree with the City that it is not outside the realm of possibility that a police officer would have a face-to-face, one-on-one standoff with a high velocity semi-automatic assault rifle pointed at him with the safety off so as not to be considered an abnormal working condition for someone who is charged to go in harm's way, just because such an event is not outside the pale of consideration does not mean that it is not a compensable psychological injury.

■ The "abnormal working condition" approach is a method to distinguish psychological injuries that are compensable because the necessary causal relationship between employment and mental disability has been established from those psychological injuries that arise from an employee's subjective reaction to normal working conditions. *Martin v. Ketchum*, 523 Pa. 509, 568 A.2d 159 (1990). Most workers' compensation claims involving abnormal working conditions are ones that are best described as arising from series of work events occurring over a period of time that caused stress that led to the psychological harm. Unless it is established that these events are so extraordinary and cannot be envisioned as part of the work, the psychiatric injury is not considered abnormal but merely normal stress that flows from the normal wear and tear of everyday work events to which the claimant has a subjective, i.e., an abnormal reaction to those events. As a result, any psychological injury is considered to be brought by the employee's own subjective reaction to normal events and not the work itself, making the injury non-compensable. However, where there is an extraordinary event that can be pinpointed as causing the psychological trauma, almost always an event that exposes a claimant to great physical danger, there is no requirement that the event be one that cannot be envisioned as part of the claimant's duties. Once a claimant establishes by credible competent medical evidence that the extraordinary event caused his or her psychological injury,[6] the extraordinariness and intensity of such an event satisfies the requirement that the claimant's psychological injury is an objective response, i.e., a normal response to that specific extraordinary event.

■ Although we are aware that police work is inherently highly stressful, and while it may be considered not "abnormal" because it is not beyond the realm of possibility that it is going to occur, it is an extraordinary event for a police officer to confront an unstable suspect, armed with a semi-automatic rifle pointed at his head for approximately six minutes without any backup. The Commission accepted Ryder's medical witness's testimony which pinpointed this event as the sole cause of Ryder's post-traumatic stress. Moreover, because the event was so extraordinary and involved imminent physical harm, it also satisfies the requirement that it is an objective reaction to that event. Because Ryder sustained his burden of proof of showing a psychological injury because the May 4, 1996 standoff was an actual extraordinary event that caused Ryder's post-traumatic stress injury, the well-reasoned decision and order of the Honorable Stephen E. Levin is affirmed.

### ORDER

AND NOW, this 22nd day of May, 1998, the order of the Court of Common Pleas of Philadelphia County at No.9705–1128, dated October 7, 1997, is affirmed.

---

5. Whether a claimant has established that his work-related injury was the result of an extraordinary event or an abnormal working condition is a mixed question of fact and law fully reviewable by this court on appeal. *City of Philadelphia v. Workers' Compensation Appeal Board (Brasten)*, 682 A.2d 875 (Pa.Cmwlth.1996), *petition for allowance of appeal granted*, 548 Pa. 23, 693 A.2d 200 (1997).

6. Because the Commission found that the May 4, 1996 incident was the sole cause of his psychological injury, this case differs from *Parson v. Workmen's Compensation Appeal Board*, 164 Pa. Cmwlth. 165, 642 A.2d 579 (1994) and *Benesky v. Workmen's Compensation Appeal Board*, 523 Pa. 509, 568 A.2d 159 (1990) (decided together with *Martin v. Ketchum*) where the referees in those cases found that work-related events involving possible physical harm was not the cause of a claimant's post-traumatic stress syndrome.