**Ellen SCOTT, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (JEANES HOSPITAL), Respondent.**

**Jeanes Hospital and Phico Insurance Company, Petitioners,**

v.

**Workers' Compensation Appeal Board (Scott), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 18, 1998.

Decided June 14, 1999.

---

5. We note that we have reviewed the record as well and agree with the trial court's summary of the testimony.

Gerard W. Langan, Jr., Pittston, for petitioner.

Ross A. Carrozza, Scranton, for respondent.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

LEADBETTER, Judge.

Ellen Scott (claimant) appeals from the June 19, 1995, order of the Workers' Compensation Appeal Board (Board),[1] which affirmed the decision of the Workers' Compensation Judge (WCJ) calculating the amount of claimant's partial disability benefits. Jeanes Hospital (employer) cross appeals from the June 19, 1995, order as well as from the order of the Board entered on March 13, 1993, which affirmed the WCJ's decision to grant claimant benefits for a psychic injury.

Claimant was employed as an accounting supervisor, and her duties involved posting cost disbursements, writing checks, completing financial statements, and supervising two part-time bookkeepers. Prior to June 1986, claimant enjoyed her job and received excellent performance evaluations. However, claimant's job situation changed dramatically after June 1986, when Kathryn Barone became claimant's supervisor. Barone reduced the time deadlines for all projects and imposed substantially more demanding standards in all respects. Barone was repeatedly and openly critical of claimant's work. Claimant testified that on October 29, 1986, Barone asked claimant why she did not attend a meeting that claimant was never directed to attend. Immediately after this incident, claimant began to experience chest pains and spoke with employer's company nurse. The company nurse sent claimant home, and claimant never returned to work. Beginning at some unspecified time thereafter, employer paid claimant her accrued sick leave, personal days and vacation days. When those benefits were exhausted claimant was placed on a medical leave of absence. In August of 1987, employer terminated claimant.

On February 1, 1988, claimant filed a claim petition stating that she was disabled by "stress which caused [her] to be absent from employment." She sought benefits for a closed period of time, October 29, 1986, through November 19, 1987, and later amended her petition to extend the period of her disability to January 1, 1988. Employer filed an answer denying claimant's allegations.

Over the course of several hearings before the WCJ, both parties presented evidence. Claimant testified to the above-recited facts. Claimant further testified that she worked approximately ten to twenty hours per week as an independent contractor for another firm, River Associates, during the time she worked for employer,[2] and continued to do so after she left employer. She had developed her own accounting business to a full time practice by January 1, 1988. Claimant also presented the testimony of her treating physician, Dr. Geraldine Baird, who diagnosed claimant as suffering from severe depression. Dr. Baird opined that claimant's depression was secondary to her work for employer and that claimant was not able to return to "*that* job under *those* conditions." (N.T. 11/15/89, p.32) (emphasis added).

Employer presented the testimony of Barone, who explained that she moved up the deadlines on projects and increased claimant's work by changing the way claimant performed certain tasks. Barone testified that she considered claimant's performance to be marginal. Employer also presented the testimony of Dr. Wolfram Reiger, who, after examining claimant, opined that claimant did not sustain a psychiatric injury caused by her work.

---

1. The Act of June 24, 1996, P.L. 350, amended Section 107 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 27, by renaming the Workmen's Compensation Appeal Board, as the Workers' Compensation Appeal Board, effective August 23, 1996.

2. Before working for employer, claimant had been employed full-time by River Associates.

After the hearings were concluded, on September 23, 1991, the WCJ issued an order granting claimant total disability benefits from October 28, 1996, to January 1, 1988, in the amount of $292.05 per week. The WCJ determined that claimant's testimony was credible and that Barone's testimony was credible only to the extent that it corroborated claimant's testimony. The WCJ accepted the opinion of Dr. Baird and rejected Dr. Rieger's testimony. Relying on the aforementioned credible evidence, the WCJ held that claimant sustained a mental injury caused by exposure to abnormal working conditions while working for employer, and therefore, granted claimant benefits. The WCJ's decision did not include any findings of fact as to claimant's post-injury part-time work for River Associates, nor were her profits from that work factored into the WCJ's calculation of her benefits.

Employer appealed to the Board, asserting that the WCJ erred in granting claimant benefits because she failed to sustain her burden of proving that she suffered a mental injury caused by abnormal working conditions. Employer also asserted that the WCJ neglected to make findings of fact on the issue of claimant's concurrent employment with River Associates and failed to calculate claimant's appropriate partial disability rate.

At some point while employer's appeal was pending before the Board, claimant acknowledged that, "although she was totally disabled from her position with employer ... she was still engaged in this part-time self-employment activity and, thus, ... could not, in fact, be considered totally disabled during this time period as she did have some earnings from her self-employment." (Claimant's brief at 30.) The Board affirmed the WCJ's decision to grant claimant benefits for a mental injury. However, based on the fact that claimant acknowledged her disability was partially due to her part-time work, the Board remanded the case to the WCJ for findings of fact and conclusions of law concerning her partial-disability status.[3]

On remand, after hearing additional evidence and testimony from claimant, the WCJ issued a decision on claimant's partial disability status. The WCJ found as fact that claimant worked for River Associates as a "subcontractor"[4] on a part-time basis after she began working for employer and continued to do so even after she left her job with employer. Eventually, she developed other clients in addition to River and her self-employment became a full-time business by January 1, 1988.[5] In accordance with these findings, the WCJ calculated partial disability benefits for the period October 29, 1986, through December 31, 1987, and suspended benefits effective January 1, 1988. The Board affirmed, with minor modifications, and these cross-appeals ensued.

In its appeal, employer contends that claimant failed to establish that she was subjected to abnormal working conditions because the changes instituted by Barone, *i.e.*, new deadlines, procedures, and demands that claimant utilize proper accounting methods and correctly do her work, were *normal* working conditions. While psychiatric disability caused by work-related stress may be compensable

---

3. For workers' compensation purposes, the term "disability" refers to the degree that an injury affects a claimant's earning power. *Dillon v. Workmen's Compensation Appeal Bd. (Greenwich Collieries)*, 536 Pa. 490, 501, 640 A.2d 386, 391 (1994). Partial disability benefits may be measured by comparing the claimant's earnings before the injury occurred to the claimant's post-injury earnings. *Scott v. DeAngelis*, 3 Pa.Cmwlth. 168, 281 A.2d 172, 176 (1971). Accordingly, the WCJ was obligated on remand to determine the extent of claimant's loss of earning power and adjust her benefits accordingly.

4. Based upon the record, it is evident that the WCJ used the term "subcontractor" to mean independent contractor.

5. During this period, claimant was also attending evening classes at the Wharton School of Business.

under Section 301(c) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1), the degree of proof required in such cases is quite high. *Antus v. Workmen's Compensation Appeal Bd. (Sawhill Tubular Div., Cyclops Indus.)*, 155 Pa.Cmwlth. 576, 625 A.2d 760, 764 (1993), *aff'd* 536 Pa. 267, 639 A.2d 20 (1994). Thus, a claimant seeking compensation for a psychiatric injury which is unaccompanied by physical trauma (often referred to as a "mental/mental" injury) is required to prove that (1) he or she suffered a psychiatric injury (2) which was causally related to his or her employment (3) and was more than a mere subjective reaction to normal working conditions (4) for that kind of job. *Id.* As our court has recently noted:

> The "abnormal working condition" approach is a method to distinguish psychological injuries that were compensable because the necessary causal relationship between employment and mental disability has been established from those psychological injuries that arise from an employee's subjective reaction to normal working conditions. *Martin v. Ketchum*, 523 Pa. 509, 568 A.2d 159 (1990). Most workers' compensation claims involving abnormal working conditions are ones that are best described as arising from series of work events occurring over a period of time that caused stress that led to the psychological harm. Unless it is established that these events are so extraordinary and cannot be envisioned as part of the work, the psychiatric injury is not considered abnormal but merely normal stress that flows from the normal wear and tear of everyday work events to which the claimant has a subjective, i.e., an abnormal reaction to those events. As a result, any psychological injury is considered to be brought by the employee's own subjective reaction to normal events and not the work it-

self, making the injury non-compensable.

*City of Philadelphia v. Civil Serv. Comm'n*, 712 A.2d 350, 354, 1998 Pa. Commw. LEXIS 354, at *11 (Pa. Commw.Ct. 1998).

We have repeatedly found unsatisfactory performance reviews or criticism of poor work not to amount to abnormal working conditions, however severe the psychiatric stress they may have caused. *See Pate v. Workmen's Compensation Appeal Bd. (Boeing Vertol Co.)*, 104 Pa.Cmwlth. 481, 522 A.2d 166 (1987). These cases have included situations where the negative reviews resulted from changed working conditions and new performance evaluation standards. *See Pennsylvania Human Relations Comm'n v. Workmen's Compensation Appeal Bd. (Blecker)*, 655 A.2d 1055 (Pa.Cmwlth.1994), *aff'd.*, 546 Pa. 83, 683 A.2d 262 (1996) (retroactive application of new performance standards to attorney was unreasonable but did not amount to abnormal working conditions); *Lilley v. Workmen's Compensation Appeal Bd. (York Int'l Corp.)*, 150 Pa.Cmwlth. 555, 616 A.2d 91 (1992) (new machinery and new productivity standards were not abnormal conditions).

■ Similarly, the stress arising from increased workloads and responsibilities has not been found to be an abnormal condition. In *Antus*, we found non-compensible a claim for mental disorder caused by "a change of duties, coupled with increased responsibility and a dramatically harsher and more dangerous work environment than that to which he was accustomed." 625 A.2d at 765. In *Hershey Chocolate Co. v. Workmen's Compensation Appeal Bd. (Lasher)*, 546 Pa. 27, 682 A.2d 1257 (1996), our Supreme Court reversed a grant of benefits where the WCJ had found that "the increase in claimant's workload, resulted in an excessive workload." *Id.* at 39, 682 A.2d 1257, 682 A.2d at 1263. The court cited with approval *Berardelli v. Workmen's Compensation Appeal Bd. (Bureau of Person-*

*nel State Workmen's Ins. Fund)*, 134 Pa. Cmwlth. 450, 578 A.2d 1016, 1019 (1990), *alloc. denied,* 527 Pa. 625, 592 A.2d 46 (1991), wherein we denied benefits finding no evidence in the record that workload increases were unusual for claimant's position nor that the increases were not shared by fellow employees. *Id.* We must recognize that demanding job standards and stressful time deadlines are particularly inherent in the kind of professional work done by claimant. It is noteworthy that although he found "changes in her duties which increased stress and persistent shorthandedness which increased her hours and responsibilities," the WCJ did not find (supervisor) Barone's more stringent requirements to be objectively unreasonable, nor did he find her criticism of claimant to be unfounded. Moreover, the record reflects that the increased pressure was also felt by claimant's co-worker (N.T. 101, 2/5/88, p.25). Accordingly, we cannot accept his conclusion that the working conditions were "abnormal." [6]

 Finally, for a claimant to prove the existence of a compensable injury, the general standard is that he or she must show that such injury "rendered him or her unfit or unable to do the type of work he or she had been engaged in when injured." *Farquhar v. Workmen's Compensation Appeal Bd. (Corning Glass Works),* 515 Pa. 315, 528 A.2d 580, 587 (1987). Here, claimant did not dispute that she remained fully capable of performing her previous accounting duties, only that she could not work with Barone as her supervisor.[7] In fact, she continued to provide accounting services to others throughout the period for which she claims disability.

Thus, she failed to meet her essential burden of proof.

 The fact that claimant only worked part-time until January of 1988 does not change our conclusion. Disability, entitling a claimant to benefits under the Workers' Compensation Act is synonymous with "loss of earning power." *See Dillon v. Workmen's Compensation Appeal Bd. (Greenwich Collieries),* 536 Pa. 490, 501, 640 A.2d 386, 391 (1994). If a claimant is able to secure employment that, not because of limitations caused by the injury but for other reasons, is only part-time, his earning power is calculated as though he were employed full-time. *Harle v. Workmen's Compensation Appeal Bd. (Telegraph Press),* 540 Pa. 482, 488, 658 A.2d 766, 769 (1995). In the instant case, claimant continued her independent contractor services for River Associates after she stopped working for employer, and by January of 1988, she had developed her self-employment into a full-time business. Thus, even though claimant's earnings after leaving employer did not match her previous earnings, since her "earning power" was not affected by a work-related injury, she was not entitled to benefits. *Id.*

Accordingly, the order of the Board is reversed.[8]

## ORDER

AND NOW, this 14th day of June, 1999, the order of Workers' Compensation Ap-

---

6. Whether the WCJ's findings of fact support a conclusion that claimant has been exposed to abnormal working conditions is a question of law subject to our plenary review. *Hershey Chocolate,* 546 Pa. at 34, 682 A.2d at 1260 [citing *Wilson v. Workmen's Compensation Appeal Bd. (Aluminum Co. of Am.),* 542 Pa. 614, 624, 669 A.2d 338, 343 (1996)].

7. The record reflects the following direct testimony of claimant:

Q: At any point, since October 29, 1986, would you have been able to return to your job at Friend's Hall?
. . . .
A: Well, I could return to my job at Friend's Hall if I had a different supervisor.

8. In light of our disposition of employer's appeal, we need not reach the issues raised by claimant's appeal, which relate to the calculation of benefits.

peals Board in the above-captioned matter is hereby REVERSED.

Judge FRIEDMAN concurs in the result only.

Judge DOYLE dissents.