164

Norman R. Smith, Appellant *v*. Civil Service Commission of the City of Philadelphia, Appellee.

Francis DiMario, Appellant *v*. Civil Service Commission of the City of Philadelphia, Appellee.

Francis A. Lupo, Appellant *v*. Civil Service Commission of the City of Philadelphia, Appellee.

Robert A. Amanto, Appellant *v*. Civil Service Commission of the City of Philadelphia, Appellee.

Frank J. Morabito, Appellant *v*. Civil Service Commission of the City of Philadelphia, Appellee.

William J. Pickering, Appellant *v*. Civil Service Commission of the City of Philadelphia, Appellee.

James A. Booker, Appellant *v*. Civil Service Commission of the City of Philadelphia, Appellee.

Silvestro F. Reali, Appellant *v*. Civil Service Commission of the City of Philadelphia, Appellee.

William R. Green, Appellant *v*. Civil Service Commission of the City of Philadelphia, Appellee.

Clifford O. Waiters, Appellant *v*. Civil Service Commission of the City of Philadelphia, Appellee.

Submitted on briefs to Judges WILKINSON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Stanley Bashman,* for appellants.

*Barry Grossman,* Assistant City Solicitor, with him, *James M. Penny, Jr.,* Deputy City Solicitor and *Sheldon L. Albert,* City Solicitor, for appellee.

OPINION BY JUDGE MacPHAIL, July 22, 1980:

This case consists of ten appeals from final orders of the Court of Common Pleas of Philadelphia County. In all of these cases the lower court has affirmed a denial of benefits by the Philadelphia Civil Service Commission (Commission) under Regulation 32.[1] While each appeal will be considered separately in this decision, the general principles of law applicable to all of the appeals are stated at the outset to avoid unnecessary repetition.

Regulation 32 is similar in intent and form to The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq., and this Court has held that principles enunciated in interpreting The Workmen's Compensation Act are applicable to Regulation 32 where similar substantive issues are involved. *City of Philadelphia v. Hays*, 13 Pa. Commonwealth Ct. 621, 320 A.2d 406 (1974).

Because the lower court did not take additional testimony in any of these appeals, our review is to determine whether any constitutional rights of the claimants have been violated, whether the Commission abused its discretion or committed an error of law, and whether the findings made by the Commission are supported by substantial evidence. *City of Philadelphia v. Collins*, 13 Pa. Commonwealth Ct. 643, 320 A.2d 421 (1974).

Under Regulation 32 the claimant has the burden to prove that a disability is present and that it is service connected, *i.e.* arising out of or in the course of employment in the civil service. Regulation 32.028. In each of the cases before us for review, the Commission

---

[1] Regulation 32 was enacted to provide benefits for all employees of the City of Philadelphia in the event they were injured or disabled in the course of their public service.

found that the injury was not service connected. Therefore, because the party with the burden did not prevail below, we will review each case to determine whether the Commission's findings are consistent with the conclusions of law and each other and can be sustained without a capricious disregard of the evidence.[2] *Workmen's Compensation Appeal Board v. Keller*, 27 Pa. Commonwealth Ct. 263, 366 A.2d 623 (1976).

As factual background it should be noted that each claimant received treatment at either Philadelphia General Hospital (PGH) or the Municipal Employees Compensation Clinic (Clinic). The determination that a disability existed and its extent and character in each case was made by the Chief of Municipal Medical Dispensary (City physician).[3] Each claimant had a hearing before a safety officer and appealed the denial of benefits to the Commission.

### Norman R. Smith

Norman R. Smith had been a Philadelphia policeman for approximately fifteen years and has suffered a series of both on and off duty injuries to his back. The injury in issue occurred on February 20, 1971 when Smith was involved in an automobile acci-

---

[2] Capricious disregard is a wilful, deliberate disbelief of a probably trustworthy witness, whose testimony a person of normal intelligence could not challenge or doubt. *Workmen's Compensation Appeal Board v. Keller*, 27 Pa. Commonwealth Ct. 263, 366 A.2d 623 (1976).

[3] In several of these cases, the Commission appears to use the term "functional disability" as a signal that, in their opinion, the employee's disability no longer exists. However, where the Clinic chooses to make the determination that a disability exists rather than ordering the employee back to work under Regulation 32.11, it cannot be said that the existence of the disability is in issue. The employee need not prove that there is a disability where that determination has been made by the City's own physician.

dent while on duty. He has not worked as a police officer since that injury.

On September 1, 1971, Smith was found to be permanently and partially disabled by the City physician with a diagnosis of "back pain—cervical and back sprain." The Commission found that Smith's disability is not service connected.

Smith argues that the medical testimony presented establishes that the disability was caused by the February 20 accident and that the Commission erred in failing to give Regulation 32 the liberal construction mandated by case law. *Hays, supra,* at 625, 320 A.2d at 409.

The basis of the Commission's denial of benefits is that Smith failed to show a causal connection between his present disability and the accident of February 20. The Commission noted that Smith fell on January 1, 1971 while off duty and injured his ribs and back on the right side. Prior to that fall, during 1969 and 1970, Smith had been treated by his personal physician for back pain. Given these facts, the Commission found that a causal relationship between the accident of February 20, 1971 and Smith's disability had not been established. The evidence on causation presented by Smith consisted of his own testimony and that of Raymond O. Stein, M.D. While Dr. Stein mentioned the prior injuries to Smith's back, he does not address whether they did or could contribute to Smith's disability. Further, Dr. Stein at no point in his testimony makes a clear statement that the accident of February 20, 1971 *caused* Smith's disability.

While it is clear that Smith was injured on February 20, 1971, it is not obvious that this injury caused his present disability. Because of his history of back injuries and discomfort for which he was seeking medical treatment prior to February 20, 1971, the causal connection between the accident and his present

disability is not obvious. Unequivocal medical testimony on causation is necessary where the causal connection between the injury and the disability is not obvious. *City of Philadelphia v. Murphy*, 13 Pa. Commonwealth Ct. 630, 320 A.2d 411 (1974).

A careful review of the record in this case convinces us that Dr. Stein's testimony does not constitute unequivocal medical testimony. It was not unreasonable for the Commission to consider Smith's medical history of back problems. Smith simply failed to carry his burden of proof on causation.[4]

We affirm.

### *Francis DiMario*

Francis DiMario was injured while on active duty as a Philadelphia policeman on June 15, 1971. DiMario was descending stairs at a private residence while helping to carry a stretcher. The person being carried made a sudden movement causing DiMario to slip and fall down the remaining steps. The stretcher landed on top of him. He was admitted to PGH and has not returned to work since the accident. He was determined to be permanently and partially disabled by the City physician on July 6, 1972 with a diagnosis of "Lumbosacral sprain."

DiMario's medical history showed a series of on and off duty injuries. On January 23, 1970, he was involved in a collision while off duty and injured his neck.[5] On March 28, 1970, DiMario suffered groin and

---

[4] Smith did not allege aggravation of an asymptomatic pre-existing condition such as could entitle him to benefits under Regulation 32. *City of Philadelphia v. Murphy*, 13 Pa. Commonwealth Ct. 272, 320 A.2d 440 (1974). We do not, therefore, address the issue.

[5] This injury is listed on DiMario's service record as "Off duty injured neck (and back) in vehicle collision. Sick Leave." The safety

back injuries while attempting to restrain a deranged patient at Hahnemann Hospital. He returned to active duty on June 22, 1970 and received no further treatment for this injury.

The Commission found that DiMario had failed to establish a causal connection between his injury and the 1971 accident. The Commission ordered DiMario to return to limited duty.

The record shows that DiMario was treated at PGH from the date of the accident until in or about July of 1972. In January of 1972, he was admitted to PGH and both a myelogram and an electro myelogram were performed. The results of these tests were inconclusive. The doctors suspected disc damage, but stated that exploratory surgery was needed to make an exact diagnosis. DiMario refused exploratory surgery.

The evidence presented to establish causation was DiMario's testimony that he fell down the stairs while carrying the stretcher; that he could not lift the stretcher after he stood up; that he experienced pain; and that he reported to PGH where he was admitted.

DiMario also presented the report of Dr. Raymond O. Stein, who diagnosed his back problem as damage to an intervertebral disc. Dr. Stein referred to the injury of March 28, 1970 and stated that the pain therefrom had disappeared prior to the injury of June 15, 1971. He concluded that the damaged disc "appeared" to be related to the accident of June 15, 1971. No evidence was presented in rebuttal.

The medical evidence presented by Dr. Stein may not be unequivocal, however, on the facts of this case we find that unequivocal medical testimony is not needed because the causal relationship between the

---

officer stated, however, that "further investigation discloses that this injury (the accident of January 23, 1970) was confined to the neck region."

disability and the accident of June 15, 1971 is obvious. *Workmen's Compensation Appeal Board v. Bethlehem Mines Corp.*, 22 Pa. Commonwealth Ct. 437, 349 A.2d 529 (1975).

The Commission finds that DiMario was injured on June 15, 1971, but holds, without explaining why, that this injury did not cause the disability.[6] Based on the record before us, we find that the Commission capriciously disregarded DiMario's evidence on causation.[7]

We reverse.

### Francis A. Lupo

Francis A. Lupo was on duty as a Philadelphia police officer on February 16, 1970 when he slipped on ice and injured his lower back. He was taken immediately to PGH; he was released the same afternoon, but received treatment at the Clinic until in or

---

[6] It appears from the record that the denial of benefits was a result of DiMario's refusal to undergo exploratory surgery. Such refusal, however, clearly has nothing to do with causation and very probably could not even succeed as a basis for forfeiture of benefits. *See*, A. Barbieri, *Pennsylvania Workmen's Compensation* §5.26(8).

[7] At first blush our holding as to DiMario may seem inconsistent with our holding as to Smith. The cases are distinguishable, however, because, as to Smith, the Commission relied on the prior injuries in denying benefits and Dr. Stein's testimony failed to meaningfully address them. Further, Smith was injured only a little over one month before the accident in issue and was treated by his personal physician for back pain shortly before the injury in issue. As to DiMario, the Commission did not rely on the prior injuries in denying benefits, the injuries were more than one year prior to the injury at issue, and Dr. Stein stated that all symptoms from the March 28, 1970 injury had subsided prior to the injury at issue (the injury of January 23, 1970 was only to the neck). Finally, DiMario worked on active duty for a year without any difficulty prior to the injury at issue.

Based on the above, we find that an obvious causal connection is present in DiMario's case, but is not present as to Smith.

about January of 1971. During this period he successfully performed limited duty. On January 28, 1971, he was determined by the City physician to be permanently and partially disabled due to a "functional disability of spine."

In its opinion, the Commission held that since the only evidence of a disc problem consisted of Lupo's statements and the diagnosis of his physician (which the Commission notes was not supported by x-ray evidence), it was "impossible" for the Commission to conclude that Lupo's disability was service connected. The Commission's conclusion seems to be that since there is no evidence of organic injury, the disability is not service connected.

Despite the absence of x-ray evidence, the City physician determined that Lupo *was* injured *and* that he was permanently and partially disabled. This was a given fact which the Commission nowhere mentions in its opinion. The most that can be said for the report of the clinic is that they could find no *organic* cause for Lupo's disability. Such a finding has no bearing whatsoever on whether the injury is *service connected*, but, rather, goes to the question of whether the injury *exists*, a fact already established by the City physician.

In its opinion the Commission also states that "the evidence discloses appellant, a 25 year old policeman, with three years on the force, *was injured* February 16, 1970 when, getting out of his radio patrol car, he slipped on the ice and experienced low back pain." (Emphasis added.) Having found that Lupo was injured in a service connected accident, and there being no evidence of any other cause of the disability, the Commission cannot now deny benefits without a capricious disregard of the evidence on causation that was presented by Lupo. *See, City of Philadelphia v. Gaudreau*, 13 Pa. Commonwealth Ct. 584, 320 A.2d 424 (1974)

We reverse.

## Robert A. Amanto

The Appellee Commission does not make any reference to Mr. Amanto in its brief. We assume, therefore, that Appellee is satisfied with the Statement of the case in Amanto's brief. Pa. R.A.P. 2112.

Amanto suffered two neck injuries. The first, in October of 1968, occurred while he was off-duty. He returned to active duty as a Philadelphia policeman in November of 1968 and experienced no further difficulties until the incident at issue herein, which occurred on August 14, 1970. Amanto was injured when the patrol car he operated was struck by a private vehicle.

Amanto reported to PGH and performed no duty until September 21, 1970 when he returned to active duty. Four days later he reported back to PGH complaining of neck pain. He remained off duty until October 13, 1970 at which time he was placed on limited duty. On October 7, 1971, Amanto was again placed on active duty, which he could not perform. He was determined by the City physician to be permanently and partially disabled on August 19, 1971 with a diagnosis of "cervical strain; no objective evidence."

Because the Commission does not question the existence of Amanto's disability, but only whether it was caused by the accident of August 14, 1970, we must examine the record for evidence of causation.

The medical testimony presented by Amanto is that the accident on August 14, 1970 aggravated or reinstituted the neck injury first sustained in 1968. This testimony is unequivocal and uncontradicted. A claimant is clearly entitled to benefits if an accident causes injury by aggravating an asymptomatic preexisting condition. *City of Philadelphia v. Murphy*, 13 Pa. Commonwealth Ct. 272, 320 A.2d 440 (1974).

The Commission has capriciously disregarded competent medical evidence.

We reverse.

## Frank J. Morabito

Frank J. Morabito had been employed as a fireman for the city of Philadelphia. On May 10, 1972, he responded to a call and experienced cold sweats, nausea and chest pains while at the firegrounds. He sought medical help on May 15, 1972 when these symptoms became acute. He was admitted to the hospital where he remained for nineteen days. He returned to limited duty in November of 1972 and has not been able to return to active duty. On December 10, 1974 he was determined to be permanently and partially disabled as a result of "post acute myocardial infarction."

In order to recover, Morabito must show that his heart attack was the result of unusual exertion on the basis of his individual work history. *Hays, supra.*[8]

The Commission found that the events of May 10, 1972 did not constitute unusual strain. The claimant testified that he drove the truck to the scene of the fire and connected the apparatus alone because they were short handed. He then moved about aiding in rescue efforts and returning to the truck to check equipment and monitor radio transmissions. There was no testimony as to how many men were not present nor as to what Morabito's duties would have been if a full contingent were present. We must find, therefore, that

---

[8] While the Workmen's Compensation Act has eliminated the requirement of an accident, Regulation 32 retains the pre-1972 definition of disability, *i.e.* "a physical or mental condition caused by accident or occupational disease..." Regulation 32.022.

Also, Morabito would need to show unusual strain in any event because the incident alleged to have caused his heart ailment occurred prior to the effective date of the 1972 amendments.

Morabito failed to carry his burden of proving unusual exertion and the Commission did not err in denying benefits.

We affirm.

### William J. Pickering

William J. Pickering sustained a service connected injury to his left knee on July 25, 1972 while on surveillance duty as a Philadelphia policeman. He reported to PGH where a tentative diagnosis was made and he was placed on "no duty." The following day, he was treated at the Clinic and return to active duty was recommended. In August of 1972, he returned to the Clinic and light duty was recommended. Finally, on August 23, 1972, PGH diagnosed the injury as a torn medial meniscus and recommended surgery. Pickering refused surgery and, on November 13, 1972, was ordered to return to active duty. He filed a Regulation 32 appeal from this order.

A hearing was held before the Commission on February 13, 1973 at which Pickering stated that he did not want the needed surgery performed at PGH. The hearing ended on an inconclusive note. Apparently the Commission expected Pickering to pay for the surgery himself and then the appeal would be decided. On February 8, 1974, the Commission denied Pickering's appeal because he had failed to have the surgery within the year.

Obviously, whether Pickering had surgery does not affect the fact that he sustained a service related, compensable injury. The record shows that there is no dispute on this issue and we find, therefore, that Pickering is entitled to benefits under Regulation 32.

The issue is whether the refusal of surgery affects this entitlement, *i.e.* should Pickering forfeit his benefits for refusal of medical services?

The question of forfeiture of benefits under Regulation 32 is an area closely akin to forfeiture of benefits under the Workmen's Compensation Act. We hold, therefore, that the standards applied to determine when an employee forfeits workmen's compensation benefits may be applied in determining forfeiture under Regulation 32.

In order to establish forfeiture the City must show that the refusal of treatment was unreasonable and that further damage or increased incapacity resulted from the refusal. Section 306(f) of The Workmen's Compensation Act, 77 P.S. §531(4).

The record shows that Pickering refused the surgery at PGH because of their initial inability to diagnose the problem and because a fellow officer who had surgery at PGH for the same kind of injury had experienced complications. This cannot be held to be unreasonable under all of the circumstances.

The City has not met its burden to show that any further injury resulted from the refusal to undergo surgery. Therefore, there is no basis for a forfeiture of benefits in this case.

Because the City failed to establish any basis for forfeiture, we reverse their denial of benefits.

### James A. Booker

James A. Booker suffered injuries to his neck and back on July 13, 1970 while on duty as a Philadelphia policeman. The injuries were the result of an automobile accident. Booker was treated at PGH until July 7, 1971 when he was determined to be permanently and partially disabled with a diagnosis of "[n]o specific evidence of disease. Symptoms seem to be subjective."

The safety officer determined that Booker's disability was not service connected. The Commission affirmed. The Philadelphia Court of Common Pleas

remanded the case for the empaneling of an impartial board of psychological and neurological specialists. The Commission appealed that order to this Court, *Philadelphia v. Booker,* 13 Pa. Commonwealth Ct. 588, 320 A.2d 426 (1974), and the remand order was affirmed.

The impartial board was composed of two psychologists and a neurologist. Only one of the members of the board found a causal connection between Booker's accident and his present disability. The Commission concluded from a consideration of all the evidence that Booker had failed to meet his burden of proof. We agree.

Order affirmed.

### Silvestro F. Reali

Silvestro F. Reali was injured in an auto accident while on duty as a Philadelphia policeman on May 26, 1962. He was treated at PGH for injuries to his knee and neck. He returned to active duty on August 20, 1962.

In July of 1971, Reali again sustained an on-duty injury to his neck when he caught a polygraph machine that had fallen from a top shelf. He was again treated at PGH and returned to active duty in November of 1971.

On March 17, 1972, Reali was injured in a scuffle with a suspect to whom a polygraph test was being administered. Reali was treated at PGH, but conservative treatment failed to improve his condition and surgery to remove a damaged disc was performed. The inevitable result of this surgery was to render Reali unable to perform as a police officer. He was determined to be permanently and partially disabled by the City physician on December 29, 1972 with a diagnosis of "post surgical fusion of cervical spines."

The safety officer found that Reali's disability was caused by a degenerative disease process with no hint

of traumatic origin and denied benefits. The Commission found that Reali's disability is not service-connected and denied benefits.

The issue presented is whether the injury on July 19, 1971 aggravated an asymptomatic condition causing the disc in Reali's neck to rupture.

The medical testimony presented by Reali described the claimant's condition as twofold: 1) he suffered from arthritis and 2) he suffered from a ruptured disc.

The arthritis was asymptomatic and might have remained so. The injuries caused discovery of the presence of arthritis, but the physician could not state with certainty whether the accident with the polygraph machine aggravated the arthritic condition. The testimony shows that the arthritis alone would not, in this case, be a disabling condition.

In the opinion of the doctor who had performed the surgery, Reali's disability was the result of damage to the C-5 or C-6 disc, which occurred at some point prior to 1971; the disc degenerated over time and was jarred out of its usual anatomic position by the accident of July 1971. This testimony was unrebutted.

The Commission finds, in effect, that Reali's disc problems arose from nowhere despite the clear evidence on the record that degeneration began in 1962 and was aggravated in 1971. Both injuries were service connected.

The case law is clear that where an on-duty injury aggravates a pre-existing asymptomatic condition, a resulting disability is compensable. *Murphy, supra,* at 274, 320 A.2d at 442. The instant case is extremely strong since the evidence shows that the asymptomatic disc problem was very likely caused by an on-duty accident in 1962.

Because the Commission's denial of benefits cannot be sustained without a capricious disregard of the evidence, we reverse.

### William R. Green

William R. Green was injured while on duty as a Philadelphia policeman on November 19, 1970. He suffered a shoulder injury in a scuffle with an arrested suspect. He was treated at PGH for six months and successfully performed limited duty during that time.

On May 25, 1971, Green was determined by the City Physician to be permanently and partially disabled with a diagnosis of "functional restriction of motion in the left shoulder symptoms seem to be subjective." The safety officer found that Green's disability is not service connected. The Commission, on the basis of medical evidence presented by Green, ordered an impartial medical board.

On the basis of the reports of the Board of Medical Examiners, the Commission found Green's disability service related in part and ordered him to resume limited duty.

Green argues that he is unable to perform any duty. However, the record contains reports of five physicians; all but one state that Green can perform limited duty.

While we do not understand the Commission's finding that Green's disability is service-connected in part (the record shows clearly that the disability is service-connected and we so hold), we cannot agree with Green that the evidence shows him to be totally disabled. He simply has not sustained his burden of proving total disability.

We affirm.

### Clifford O. Waiters

Clifford O. Waiters was injured while on duty as a Philadelphia policeman. On August 6, 1969, he was running to the aid of a fellow officer when he slipped and fell injuring his neck, right arm and knee. Waiters was treated at PGH and, on August 24, 1970, was

determined to be permanently and partially disabled with a diagnosis of "functional disability of the cervical spine and shoulders."

The safety officer held that the disability was not service-connected; the Commission ordered Waiters to be examined by a psychiatrist and, based on his report, affirmed the safety officer. The lower court remanded for examination by an orthopedic specialist. The City appealed that order to this Court *City of Philadelphia v. Waiters*, 13 Pa. Commonwealth Ct. 610, 320 A.2d 435 (1974), and the remand was affirmed.

Waiters was examined by the orthopedic specialist on March 12, 1975. The physician found that the claimant suffers from subjective pain and a functional disability. The report states that "[t]he deeply rooted unconscious basis for this is not ascertainable on orthopedic evaluation."

This is an extremely close case, but, based on the medical evidence in the record, we are constrained to agree with the Commission that Waiters has failed to carry his burden to show that the accident of August 6, 1969 caused his present disability. The claimant has presented no evidence of a conversion neurosis and there is no evidence of an organic disorder.

We affirm.

ORDER IN 855, 968, 1250, 1404 AND 1405 C.D. 1977

AND Now, this 22nd day of July, 1980 the Orders of the Philadelphia Court of Common Pleas are hereby affirmed.

ORDER IN 896, 920, 922, 969 AND 1332 C.D. 1977

AND Now, this 22nd day of July, 1980, the Orders of the Philadelphia Court of Common Pleas are hereby reversed and these matters are remanded to the Civil Service Commission of Philadelphia for computation of benefits.