825 A.2d 1236

**Rosalyn GUNTER, Appellant**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Appellee.**

Supreme Court of Pennsylvania.

Argued April 9, 2002.

Decided June 16, 2003.

Richard Raymond Budney, W. Michael Mulvey, Philadelphia, for Rosalyn Gunter, appellant.

Martin Gerard Malloy, Philadelphia, Janet Marie Tarczy, Carlisle, for W.C.A.B., appellee.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION OF THE COURT

JUSTICE CASTILLE.

This Court granted review in this case to address the effect of the payment of injured on duty ("IOD") benefits to a Philadelphia police officer, under authority of Philadelphia's Civil Service Regulation 32, upon the City/employer's right to oppose the police officer's later petition for workers' compen-

sation benefits. The Commonwealth Court held that the payment of IOD benefits is not the workers' compensation equivalent of an employer issuing a notice of compensation payable ("NCP") and, for that reason, held that the City could properly challenge the petition for benefits. We affirm the Commonwealth Court's determination that the City properly could challenge the petition for benefits, albeit on different grounds than those specified by the Commonwealth Court.

The facts pertinent to the legal issue before this Court are undisputed. The Workers' Compensation Judge ("WCJ") found the following facts: Appellant was employed as a police officer with the City of Philadelphia. She was assigned as a Captain's Aide, which required her to perform clerical work, although she could at any time be assigned to patrol duty. On February 14, 1995, appellant left work at approximately 6:30 p.m., got into her own private automobile while still wearing her uniform shirt under an open leather jacket, and drove to her home. As appellant pulled her car into the driveway that she shared with the adjoining house, she noticed a black male enter the driveway, proceed to the gates behind her and begin tampering with the locks on the gates. Appellant remained in her car with the window halfway down. Becoming suspicious, she turned toward her pocketbook to retrieve her handgun. When she turned from her pocketbook, the man was at her car window.

Appellant asked the man what he was doing in her yard and told him to leave. The man responded that he wanted to ask appellant a question. Without warning, he punched appellant in the face and reached into the car and grabbed one handle of appellant's pocketbook. Appellant held onto the other handle of the pocketbook because her gun, which was not her service revolver but was a personal weapon, was still in the pocket-book. The car door opened, and appellant struggled with the man and fell to the ground. Appellant's pocketbook ripped, spilling the contents onto the ground. Her attacker scooped up some of the items from appellant's pocketbook and ran away. Appellant testified that she twice identified herself as a police officer during the assault; however, the investigation

report of the incident, which contained information supplied by appellant, does not indicate that appellant so identified herself. As a result, the WCJ did not credit this particular testimony.

Appellant suffered an ankle fracture as a result of the assault, which required surgical repair and a four-day hospitalization. Appellant did not work from February 16, 1995 through August 8, 1995, when she returned to her job as a Captain's Aide. She was unable to perform patrol duty. Appellant's supervisor, Captain Lawrence Kirkland, approved IOD benefits for appellant, and she received those benefits from February 16, 1995 to June 16, 1995. At that point, the Police Safety Office determined that Capt. Kirkland did not have authority to approve IOD benefits and stopped the payments. From June 16, 1995 until appellant's return to work on August 8, 1995, Capt. Kirkland placed her on sick leave. Appellant then filed a workers' compensation claim and a penalty petition based upon the termination of her IOD benefits.

The City of Philadelphia opposed appellant's workers' compensation claim on the ground that she was not injured in the course and scope of her employment. The WCJ dismissed appellant's claim and penalty petitions, finding that appellant had failed to meet her burden of proving that she was acting in the course and scope of her employment when she was attacked outside her home after her shift was completed. The WCJ further found that appellant had failed to demonstrate that the City had violated the Workers' Compensation Act.

On appeal to the Workers' Compensation Appeal Board ("WCAB"), appellant argued that the WCJ's decision was not supported by the evidence because the WCJ had erred in disregarding the fact that appellant had previously received wages, in the form of IOD benefits, in lieu of workers' compensation. Appellant claimed that the City was estopped from denying liability for compensation benefits by virtue of its previous payment of IOD benefits to appellant. The WCAB affirmed the WCJ's decision, holding that IOD benefits are not the equivalent of workers' compensation benefits, but instead are "distinctly dissimilar benefits." WCAB Op. at 6.

The WCAB found that the City's payment of IOD benefits was not in lieu of workers' compensation, but rather was payment for "an injury ostensibly compensable under [the City's] own internal rules and regulations governing the eligibility for and disbursement of IOD benefits." *Id.* at 6–7 (footnote omitted). Having determined that IOD benefits are not the equivalent of workers' compensation benefits, the WCAB found that the City had not admitted liability under the Act by making IOD payments and, therefore, the City was not barred or estopped from challenging appellant's entitlement to workers' compensation benefits. The WCAB further found that appellant was not performing her duties as a police officer at the time she was assaulted. Instead, she was found to be an unfortunate, off-duty victim of a crime. Thus, the WCAB held that appellant was not entitled to workers' compensation benefits.

Appellant further appealed to the Commonwealth Court, contending that the WCAB erred in holding that the City did not admit liability under the Act by paying IOD benefits. Appellant noted that, under the Act, an employer who either pays compensation to an employee or issues a notice of compensation payable ("NCP") is generally estopped from contesting liability for the injury. Appellant further noted that Commonwealth Court precedent had equated the Philadelphia Civil Service Regulation under which IOD benefits are paid to equivalent compensation paid pursuant to an NCP. Accordingly, appellant argued that the payment of IOD benefits should be considered the equivalent of payments pursuant to an NCP for purposes of determining an employer's liability under the Act.

The Commonwealth Court affirmed the WCAB in a published opinion. *Gunter v. Workers' Compensation Appeal Board (City of Philadelphia),* 771 A.2d 865 (Pa.Cmwlth.2001). The court held that the standard of proof for the award of IOD benefits differs from the "in the course of employment" standard applicable to an award of workers' compensation benefits; therefore, payment of IOD benefits is not the equivalent of the issuance of an NCP. Thus, the Commonwealth Court found that the City's initial payment of IOD benefits to

appellant did not preclude the City from later opposing appellant's workers' compensation claim and arguing to the WCJ that appellant's injuries were not work-related.

 This Court's scope of review in workers' compensation matters is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of a Commonwealth agency was not followed, and whether the WCJ's findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 322, 705 A.2d 1290, 1291 (1997). The WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight; the WCJ's decision, however, must be based on substantial evidence. *Thompson v. Workers' Compensation Appeal Board (USF&G and Craig Welding Equipment Rental)*, 566 Pa.420, 781 A.2d 1146, 1150 (2001) (citing *LTV Steel v. Workers' Compensation Appeal Board (Mozena)*, 562 Pa. 205, 754 A.2d 666, 676 (2000) and *Bethenergy Mines v. Workmen's Compensation Appeal Board (Sebro)*, 132 Pa. Cmwlth.288, 572 A.2d 843, 844–45 (1990)).

 Here, the facts are for the most part undisputed, and no party has alleged any constitutional violation or that an agency practice or procedure was not followed. Therefore, the sole issue is whether the lower courts committed an error of law in finding that the City's initial payment of IOD benefits did not preclude or estop the City from later contesting appellant's claim for workers' compensation benefits. As with all questions of law, our review is plenary. *See Murphy v. Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418, 429 (2001) (citation omitted); *Thompson*, 566 Pa. 420, 781 A.2d 1146, 1150 (2001) (citing *Universal Am-Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 563 Pa.480, 762 A.2d 328, 331 n.2 (2000)).

Philadelphia Civil Service Regulation 32.0231 sets forth the criteria for an award of IOD benefits: [1]

1. Appellant preliminarily argues that section 32.0231 (the "hero" provision) is not the part of Regulation 32 that should apply to this case.

> Disability Salary for Police Officer Injured on Duty. Notwithstanding any other provisions of these regulations, a Police Officer who is injured on duty as (1) an immediate result of the violent conduct of a third party that was directed towards the officer or a member of the public, or (2) an immediate result of performing other heroic action in an emergency situation in the line of duty, shall receive IOD pay at 100% of the officer's pre-injury base pay, including longevity. This regulation shall not cover injuries resulting from vehicular accidents in which the injured officer is a vehicular occupant at the time of the injury. The determination of the 100% pre-injury pay benefit shall be made at the sole discretion of the Police Commissioner.

This regulation, on its face, authorizes an award of full compensation to police officers who are injured on duty by the violent conduct of a third party or while performing an heroic action in the line of duty. In the immediate aftermath of appellant's injury, her supervisor, Capt. Kirkland, determined that appellant was entitled to IOD benefits. The regulation does not authorize a police captain to make the determination that an officer is entitled to IOD benefits and, in fact, after the Police Safety Office determined that appellant was not entitled to IOD benefits, Capt. Kirkland agreed that he had not been authorized to approve them.

Notably, appellant does not now suggest she was in fact entitled to IOD benefits. Instead, she maintains, in essence, that the windfall she received when the City paid those benefits upon Capt. Kirkland's erroneous authorization operates as a binding admission of liability under the Workers' Compensation Act, irrespective of the underlying merits of any initial claim to entitlement to a work injury benefit. Appellant further argues that the Commonwealth Court's

---

Appellant urges that sections 32.022 and 32.023, which are more general provisions governing "service-connected" injuries, should control. The issue in this case involves the preclusive effect of the payment of IOD benefits upon a subsequent challenge to a petition for workers' compensation benefits; as will be made apparent below, the section under which the IOD benefits were paid is irrelevant to that inquiry. To maintain consistency with the tribunals below, we will assume that IOD benefits were paid to appellant under section 32.0231.

determination that the payment of IOD benefits is not the equivalent of the issuance of an NCP under the Act is contrary to that court's previous decision in *Sammons v. Civil Service Comm'n of the City of Philadelphia,* 673 A.2d 998 (Pa.Cmwlth.1996).[2] Since *Sammons* is essential to appellant's claim, we begin with a discussion of that case.

Sammons was a veteran police detective in Philadelphia who injured his back in a fall from a chair, rendering him disabled. Sammons received IOD benefits for a period of four months and then was placed on limited duty status. Shortly after the detective returned to limited duty, the Municipal Employees' Compensation Clinic ordered him back to active duty. Sammons refused and appealed the Clinic's decision to the Civil Service Commission. The Commission denied the appeal, determining that Sammons had failed to meet his burden of proving that he had suffered a work-related disabling injury, and ordered him to return to active duty. Sammons appealed to the trial court, which affirmed the Commission.

On further appeal to the Commonwealth Court, Sammons argued that the issue of whether he had sustained a service-connected back injury had been conclusively determined by the City when it paid him IOD benefits. Therefore, according to Sammons, the only issue before the Commission on appeal was whether his service-connected disability had resolved, thereby allowing him to return to active duty. In resolving the appeal, the Commonwealth Court opined that: "Civil Service Regulation 32 is similar in intent and form to the Pennsylvania Workers' Compensation Act (Act), and we have held that the principles enunciated in interpreting that Act will apply to Regulation 32 where similar substantive issues are involved." 673 A.2d at 1002, *citing Ciccimaro v. City of Philadelphia,* 110 Pa.Cmwlth. 574, 532 A.2d 1255 (1987) and *Smith v. Philadelphia Civil Service Commission,* 53 Pa.

---

**2.** This Court granted further review in *Sammons* only to ultimately enter a *per curiam* order affirming by an equally divided court. *Sammons v. Civil Service Comm'n of the City of Philadelphia,* 555 Pa. 1, 722 A.2d 1012 (1998). No opinion was filed in support of affirmance, while three Justices joined in an Opinion in Support of Reversal. That opinion addressed only a waiver issue not pertinent here.

Cmwlth. 164, 417 A.2d 810 (1980). The Commonwealth Court then applied general workers' compensation principles in the IOD benefits context and held that an employer who pays IOD benefits concedes that an injury is work-related:

> Applying the relevant precedents established under workers' compensation law, once an employer has issued a notice of compensation payable or agreed to pay benefits, the employer has admitted that an employee's injury arose in the course of employment and is related thereto, provided that the employer has had a full opportunity to investigate the circumstances surround the employee's injury before agreeing to pay compensation. *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983). Here, Employer issued the equivalent of a notice of compensation payable or, at the very least, an agreement to pay benefits. when it placed Employee on "injured-on-duty" status.

*Id.*

The City counters that appellant's claim that the payment of IOD benefits is the equivalent of the issuance of an NCP is flawed, as is her reliance upon *Sammons*. The City's argument in this regard is both narrow and cogent. It concedes that "Civil Service Regulation 32 is similar in intent and form to the Pennsylvania Workers' Compensation Act." Appellee's Brief at 6. The City also does not dispute that the principles which animate application of the Act may effectively control, or at least exist as persuasive authority, in resolving disputes arising under Regulation 32—but, and this is the key to the City's position, only if similar substantive issues are involved. The City thus posits that, even though some provisions of the Act apply to situations in which IOD benefits are paid, *see, e.g.*, 77 P.S. § 602 (statute of limitations applicable to workers' compensation benefits begins to run once other forms of compensation for work-related injuries have ceased), the Act and Regulation 32 are not always interchangeable.

Turning to the specific issue at hand, the City notes that there are material aspects of the Act and Regulation 32 that are not equivalencies. For example, although it is clear that

IOD benefits are paid in lieu of workers' compensation benefits (City Reg. 32.023), Regulation 32 contains no provision equivalent or analogous to the Act's provisions regarding an NCP or a temporary NCP. In addition, while the Act requires an employer to promptly investigate a claim for compensation within twenty-one days of notice of an injury (77 P.S. § 717.1), Regulation 32 imposes no such requirement. These two features of workers' compensation law, not present in the context of disputes under the City Regulations, played prominent roles in the *Sammons'* court's explanation why a payment of benefits should be deemed an admission "that an employee's injury arose in the course of employment and is related thereto." 673 A.2d at 1002. In light of these distinctions, the City argues, "the procedural ramifications once IOD payments are issued, mistakenly or not, are not as clear" as the ramifications from payments resulting from an NCP. Appellee's Brief at 7.

Although the distinctions articulated by the City are legitimate, this Court need not determine whether we agree with the *Sammons* court's finding of equivalence between payment of IOD benefits and the issuance of an NCP in order to decide this case. This is so because, as the City also argues, even if we were to assume that the payment of IOD benefits is the equivalent of issuing an NCP, and that this case is accordingly governed by principles deriving from workers' compensation law, under this Court's own precedent the City is not precluded from contesting its obligation to pay workers' compensation benefits merely because of its initial, erroneous payment of IOD benefits.

Pursuant to the Act, an employer who issues an NCP may still challenge an employee's right to workers' compensation benefits under certain circumstances. Specifically, the Act provides that an NCP can be set aside when based upon a material mistake:

A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course

of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771. In 1983, in *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa.178, 465 A.2d 969 (1983), this Court held that an employer who investigates an injury and issues an NCP cannot later contest its liability for the employee's injury:

> Since appellee had an opportunity to, and in fact did, investigate the cause of appellant's disability, the notice of compensation payable it filed constitutes an admission of its liability to appellant for compensation for a lower back injury. Appellee may not now, under the guise of a termination petition, come into court and . . . contradict precisely that which it admitted in its notice of compensation payable, namely, that appellant's disability at the time the notice of compensation payable was filed was related to her 1975 fall at work.

*Id.* at 971–72. Four years later, however, in *Barna v. Workmen's Compensation Appeal Board (Jones and Laughlin Steel Corp.)*, 513 Pa.518, 522 A.2d 22 (1987), this Court refined the teaching of *Beissel* in order to accommodate those circumstances where an employer promptly pays workers' compensation benefits, but later has reason to contest whether the injury was work-related. In so doing, we discussed various reasons why an employer, in appropriate circumstances, should be able to challenge a notice of compensation payable upon grounds of mistake:

> [W]e cannot ignore the clear provision of § 771 that compensation may be terminated where it is paid under a notice of compensation which is materially incorrect. The Act imposes upon employers the duty to promptly commence payment of compensation and the cause of an employee's disability may not always be obvious. Where, as here, an employer promptly commences payment of compensation prior to commencement or completion of investigation into the cause of claimant's injuries and later determines that

the claimant's disability was never work-related, in the absence of evidence of repeated contests of the cause of the disability such as occurred in *Beissel,* the employer must be permitted to seek relief. This rule promotes the early payment to injured employees which is clearly contemplated by the Act while it preserves the legitimate expectation that an employer's liability under the Act for work-related injuries not become a general disability insurance policy.

*Id.* at 24 (footnote omitted).

This Court further clarified the issue in *Waugh v. Workmen's Compensation Appeal Board (State Workmen's Insurance Fund and Blue Grass Steel),* 558 Pa.400, 737 A.2d 733 (1999). There, the claimant, an employee of Blue Grass Steel, a Kentucky company, suffered serious head injuries in a twenty-five foot fall from a building at a building site in the State of Indiana. At the time of the fall, Blue Grass did not maintain workers' compensation insurance in Indiana but did maintain such coverage in Pennsylvania with the State Workmen's Insurance Fund, but only for workers who were injured while either working or residing in Pennsylvania. The claim form completed by the Insurance Fund when it received notice of the claimant's injury listed that the claimant resided in Pennsylvania at the time of the injury. Based upon the information supplied by Blue Grass, the Insurance Fund issued an NCP listing the claimant's address as a Kentucky address and began paying weekly benefits to claimant as well as paying his medical bills. The Insurance Fund mailed the claimant's benefit checks to the Kentucky address listed on the NCP. Four months after it began paying benefits to the claimant, the Insurance Fund filed a petition for review seeking to set aside the NCP because it contained a material mistake of fact.

The WCJ refused to set aside the notice, finding that the Insurance Fund had sufficient information at the time it issued the notice to question whether the claimant was a Pennsylvania resident. On appeal, the WCAB reversed the WCJ's decision, holding that the NCP was issued on the erroneous assumption that the claimant was a Pennsylvania

resident and that the Insurance Fund took immediate steps to set aside the NCP once it became apparent that the assumption regarding the claimant's residence was erroneous. The Commonwealth Court reversed the WCAB's decision because it determined that, even though misrepresentations were made, the Insurance Fund had failed to meet its burden of proof because it did not present the testimony of the claims investigator who issued the NCP.

This Court granted review to address whether the insurer was entitled to set aside the NCP on grounds that the employer's intentional misrepresentation of the claimant's residence was a material mistake of fact. This Court held that the insurer was so entitled, reasoning as follows:

> Here, the NCP was incorrect in a material respect—namely, it was incorrect in that it acknowledged the existence of a legal payment obligation for claimant's injury when, in fact, no such payment obligation existed, and when both employee and employer were aware that no such payment obligation existed but falsely conveyed misinformation so that [the Insurance Fund] would believe otherwise. We conclude that this sort of mistake is clearly contemplated by the language of Section 413 of the Act. To conclude otherwise would be to impute an absurd result to the Legislature, and this we will not do.... In our view, we would necessarily condemn this legislative enactment as absurd if we interpreted the enactment to allow an employee to wrongfully obtain workers' compensation benefits by making material misrepresentations on collateral documents that convey the impression that the employee is eligible for benefits when he is not. An NCP acknowledging liability pursuant to such material misrepresentations constitutes, for purposes of Section 413, a material mistake of fact—one that this Court will not favor with its judicial imprimatur.

*Waugh*, 737 A.2d at 737–38 (citations omitted).

*Waugh* clearly recognizes that the issuance of an NCP does not preclude an employer from seeking to set aside the notice based upon a material mistake of fact. That is precisely what occurred here. The City, through appellant's captain's unau-

thorized action, paid appellant IOD benefits without the Police Commissioner determining whether her injury qualified her for those benefits. Under the plain language of the pertinent regulation, appellant's captain was not authorized to approve IOD benefits—a point he conceded and which appellant does not dispute. The Police Safety Office, once it was able to actually investigate appellant's injury, determined that she was not injured while on duty and therefore was ineligible for IOD benefits. The City immediately ceased paying IOD benefits to appellant based upon the results of the Safety Office's investigation.

In light of section 771 and our precedent, even if the City's initial payment of IOD benefits is deemed the equivalent of issuing an NCP, the City should not be precluded from contesting appellant's workers' compensation claim where, as here, the payment of IOD benefits was based upon a material mistake of fact made by an unauthorized official. The City should not be harmed merely for having recognized its responsibility and paying benefits while it then proceeded to investigate the legitimacy of the claim. Indeed, given the distinctions between the Act and the City Regulation which we have described above—*i.e.,* the absence of an explicit NCP procedure and the absence of a time-frame for investigation of the work-relatedness of a claimed injury under the Regulations—it would be unfair to impose on the employer such an artificial consequence. A decision that would allow appellant to convert undeserved IOD payments into a continuing entitlement to compensation benefits would be clearly erroneous.

Accordingly, we agree with the tribunals below that the City was not precluded from challenging appellant's entitlement to workers' compensation benefits, albeit our reasons differ from those articulated below. Moreover, the evidence credited by the WCJ adequately supports the finding that appellant's injury, while an unfortunate result of a criminal assault, was not work-related. Accordingly, we affirm the Commonwealth Court's conclusion that appellant is not entitled to workers' compensation benefits.

Order affirmed.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice NIGRO files a concurring opinion.

Justice NIGRO concurring.

I agree with the majority that the City can properly challenge Appellant's petition for workers' compensation benefits in spite of its previous payment of injured on duty ("IOD") benefits. However, unlike the majority, I would not reach that conclusion by artificially equating IOD benefits to workers' compensation benefits for purposes of applying Section 771 of the Workers' Compensation Act, 77 P.S. § 771. As the City points out, the required procedures for the award of IOD benefits are very different from those applicable to the issuance of a notice of compensation payable ("NCP") for workers' compensation benefits. *See* Op. at 1240–42 (Philadelphia Civil Service Regulation 32 regarding IOD benefits neither contains a formal NCP procedure nor sets forth a time in which the investigation of a claim for compensation must be completed.) As such, I do not agree with the majority's implicit suggestion that it may be appropriate to restrict an employer's ability to modify or set aside IOD benefits to the same extent that an employer's ability to modify or set aside an NCP for workers' compensation benefits is restricted by section 771.

Accordingly, rather than relying on 77 P.S. § 771 in the instant case, I would merely hold that where, as here, IOD benefits are awarded by an unauthorized individual, without a formal investigation, and clearly in error, the employer will not be estopped from later terminating those benefits and, in addition, disputing the claimant's entitlement to workers' compensation benefits. Significantly, although Appellant argues otherwise, this situation is readily distinguishable from that in *Sammons v. Civil Service Commission of City of Philadelphia*, 673 A.2d 998 (Pa.Cmwlth.1996), where the Commonwealth Court held only that an employer may not terminate IOD benefits based on an assertion that the employee was never injured, when the employer had "an opportunity to, and in fact did, investigate the nature and existence of Employee's

disability before placing Employee on 'injured-on-duty' status." 673 A.2d at 1002.

Finally, I cannot help but comment, as did the majority, that the Appellant does not even argue to this Court that she was ever, in fact, entitled to the four months of IOD benefits that she collected. Nevertheless, she now attempts to inflate her ill-gotten spoils by essentially contending that the mere fact that she obtained them necessarily entitles her to more of the same, only this time in the form of workers' compensation benefits. In my view, Appellant should simply consider herself fortunate to have received four months of gratuitous benefits. Were the question of her entitlement to retain those benefits before this Court, I would surely be inclined to order them repaid to the City.