**John CURREN, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF CHESTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 3, 2004.

Decided Dec. 21, 2004.

---

Arthur G. Girton, Chester, for petitioner.

Bererth K. Graeff, West Chester, for respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge SMITH–RIBNER.

In No. 1046 C.D. 2004 John Curren petitions for review of an order of the Workers' Compensation Appeal Board (Board) that reversed an order of the Workers' Compensation Judge (WCJ) and denied Curren's October 13, 1993 claim petition alleging work-related chest pains and coronary artery disease. Curren questions whether the WCJ's findings that the physical exertion of his job as a police

officer caused an aggravation of his coronary artery disease are supported by substantial evidence; whether the Board usurped the WCJ's fact finding power by concluding that Curren actually suffered a "psychic" injury caused by mental rather than physical stress; and whether Curren was required to establish that the aggravation of his coronary artery disease was caused by abnormal working conditions. In No. 1045 C.D. 2004 Curren petitions for review of an order of the Board that affirmed the denial of Curren's penalty petition. The Court sua sponte consolidated the cases by order of September 29, 2004.

I

In a decision circulated on December 17, 2001, WCJ Sarah C. Makin found that Curren was hired in the 1970s as a patrol officer for the City of Chester (City) and ultimately attained the rank of Sergeant. In May 1993 he was running a patrol division, which entailed supervisory as well as patrol officer duties. He made several arrests and numerous foot pursuits. He worked mandatory overtime of a minimum of twelve additional hours per week in the year and one-half preceding May 1993; the police force was severely short of a full complement even though the City was drug-infested with many shootings and stabbings. From 1992 to May 1993 Curren had symptoms of what he thought was indigestion approximately six times when he was involved in struggles, trying to subdue individuals, physical fighting and foot pursuits. Specifically, he experienced burning pain in the area of his sternum and sweating. He sought treatment on four occasions at Crozer–Chester Medical Center for similar symptoms during the night.

Curren was off work and was receiving workers' compensation due to a back injury when he again experienced cardiac symptoms on July 4, 1993. He underwent an angioplasty; he then came under the care of Kenneth Mendel, M.D., a board-certified cardiologist, who determined from examination and review of records that Curren had advanced significant coronary artery disease, hypertension and hypercholesterolemia. He recommended that Curren not work as a police officer because of these conditions. Dr. Mendel continues to treat Curren for coronary artery disease, and he opined that Curren endured sufficient work-related stress in quality and quantity, with signs and symptoms manifested while working, to significantly accelerate and worsen his coronary artery disease and to place him at significant risk of debilitating injury if he worked after May 1993. The City presented the testimony of Dr. Robert B. Kleinman, who examined Curren and reviewed medical records. Dr. Kleinman agreed with Dr. Mendel's diagnoses, but he stated that hypertension, high cholesterolemia and cigarette smoking before 1992 caused Curren's coronary artery disease. He stated that stress has been linked to development of heart attacks and unstable angina, but not to the underlying process of development of arteriosclerosis and coronary artery disease.

WCJ Makin credited Curren's testimony and credited Dr. Mendel's testimony over that of Dr. Kleinman where they conflicted. The WCJ concluded that Curren sustained a compensable injury to his heart in the course and scope of his employment, that he became disabled on July 23, 1993 and that he was entitled to compensation and payment of related medical expenses. She also concluded that because Curren continued to receive total disability benefits for the back injury, compensation for his work-related cardiac condition should not begin until the other compensation ended or was reduced.

The Board agreed with the City in its appeal that the WCJ erred by not applying the standards set forth in *Davis v. Workmen's Compensation Appeal Board (Swarthmore Borough)*, 561 Pa. 462, 751 A.2d 168 (2000). The Supreme Court held there that where a claimant asserts a psychic injury that has manifested itself through psychic and physical symptoms, the standard to be applied is the same standard that the court articulated in *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990). Namely, the claimant must prove by objective evidence that he or she has suffered a psychic injury and that the psychic injury is other than a subjective reaction to normal working conditions.[1] The Board vacated and remanded for further consideration and the application of the *Davis* standards.

On remand, the case was considered by WCJ Carl M. Lorine. WCJ Lorine again found Curren's testimony to be credible in its entirety, and he found the testimony of Dr. Mendel to be more credible and persuasive than that of Dr. Kleinman to the extent that they were inconsistent. WCJ Lorine found that Dr. Mendel's explanation of the causal nexus between Curren's work-related activities and his coronary artery disease was consistent with Curren's testimony regarding the temporal development of his symptoms and was more plausible in a medical sense. The WCJ concluded that Curren had met his burden of proof and that his injuries were of the

"physical/physical" or "physical/mental" types and that they had been shown to cause temporary total disability and to place him at substantial risk for serious additional injury if he were to return to his police work.

On the City's second appeal the Board reversed the WCJ, stating that the finding that Dr. Mendel opined that Curren's work-related physical activities were a significant, worsening factor in the continuing development of his coronary artery disease was not supported. It said that a complete reading of Dr. Mendel's testimony indicates that "although he stated that the physical aspects of Claimant's job helped accelerate his condition, the atmosphere, 'adrenaline-related issues,' and stress caused the worsening of his condition." Board Decision, April 30, 2004, at pp. 5–6. The Board concluded that the WCJ erred in finding that this was a physical/physical or physical/mental case; rather, the Board asserted that it was a mental/physical case because a psychological stimulus caused a physical injury.[2]

Curren first stresses that he did not allege a psychic injury and that the WCJ did not find that he suffered a psychic or mental/physical injury caused by a psychological stimulus. Curren quotes Finding of Fact No. 8 from WCJ Makin's decision, which states that while in the course of performing his physical duties Curren suffered cardiac symptoms and that his testi-

---

1. The Board disagreed with the City's contention that the underlying condition could not be compensable, noting that it had been held that even if underlying disease that affects a claimant's heart is not caused by his or her employment, the claimant is not disqualified if work-related exertion causes the victim to suffer a heart attack or to suffer other disabling symptoms that may result from the heart disease, citing *Borough of Media v. Workmen's Compensation Appeal Board (Dorsey)*, 134 Pa. Cmwlth.573, 580 A.2d 431 (1990).

2. The Court's review of the Board's decision is limited to determining whether there were constitutional violations or errors of law, whether a practice or procedure of the Board was not followed and whether the necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Gunter v. Workers' Compensation Appeal Board (City of Philadelphia)*, 573 Pa. 386, 825 A.2d 1236 (2003).

mony supported a finding that the physical exertions of his job, including struggling with suspects and engaging in foot pursuits, caused an aggravation of his coronary artery disease. Curren notes that the Board's appellate role is to determine if the WCJ's findings are adequately supported by the evidence as a whole, with credibility solely a matter for the WCJ, *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992), and that the Board may not change the WCJ's findings that Curren's physical activity caused his coronary artery symptoms.

Curren also argues that Dr. Mendel's testimony supports a finding that Curren's physical work activities significantly accelerated his coronary artery disease. Curren quotes from Dr. Mendel's response to a hypothetical question describing Curren's angina symptoms both in connection with chases and struggles and at night, his additional duties as a shift commander and the anguish he suffered when an officer he sent to serve a warrant was killed by a shotgun blast:

> Cholesterol plaque is not the normal lining substance for the blood vessels. Those abnormal lining plaques if you will, are subject to injury based on the sheer forces of the rapid blood flow rushing by.
>
> The more the demand, that is a person is running, chasing, whatever, the more rapid that rate of flow, the greater the likelihood of irritation, hemorrhage into that area of irritation with plaque....
>
> ....
>
> [F]rom the nature of the work, the symptoms that you were describing he was experiencing, it would certainly fit into my definition for reasonable medical certainty that this was a causal or at least a—I don't want to say a causal

factor, but a permissive or disease modifying factor.

> Q. The word I used was an accelerating factor.
>
> A. Yes, accelerating.

Deposition of Dr. Mendel at pp. 20–21.

Finally, Curren argues that *Davis* is distinguishable and that he does not have to show the existence of abnormal working conditions. In *Davis* a long-serving police officer filed a claim alleging that he suffered a psychic injury in the form of post-traumatic stress disorder and specific work inhibition resulting from repeated stressful and life-threatening experiences over the course of his career, with physical manifestations. Curren, however, presented evidence that he suffered an acceleration of his coronary artery disease as a result of his physical work activities. In *Haddon Craftsmen v. Workers' Compensation Appeal Board (Krouchick)*, 809 A.2d 434 (Pa. Cmwlth.2002), where a forklift operator with lifting duties and deteriorating strength suffered a fatal heart attack when the plant where he worked for many years closed, the Court concluded that *Davis*-type analysis did not apply when physical work demands were shown to contribute.

The City argues that the Board did not review the credibility of any witness nor reweigh evidence; rather, it determined that there was not substantial evidence to support the WCJ's finding that an aggravation of Curren's coronary artery disease was brought about by physical stimulus and overexertion at work. The City asserts that the Board's decision is supported by substantial evidence, noting that Curren testified to episodes of angina when he was sleeping, and it quotes, among other things, the hypothetical question noted above, emphasizing the reference to the stress and mental anguish caused by the officer's killing. It concludes that the testimony does not support

a finding that Curren's injury was due to physical activities at work. The City contends that Curren did not meet the *Davis* burden of establishing abnormal working conditions.

 The Court agrees with Curren that the Board erred in this case. As is clearly articulated in *Haddon Craftsmen,* the mere fact that some mental stress may have been involved in causing cardiac injury does not require disregarding substantial, credited evidence that physical work activity contributed as well:

> Although psychological stress was a factor in causing Decedent's heart attack here, it was not the sole factor. To the contrary, the medical evidence establishes the physical demands of Decedent's work substantially contributed to his fatal heart attack. Unlike *Erie Bolt [Corp. v. Workers' Compensation Appeal Board (Elderkin),* 562 Pa. 175, 753 A.2d 1289 (2000) (reversing based on *Davis* a grant of benefits where fatal heart attack was attributed solely to stress at work and the shock of termination)], here the WCJ found that the physical requirements of Decedent's job, coupled with the emotional stress of termination, triggered Decedent's cardiac death. Therefore, because Decedent's heart attack was not simply a physical manifestation of psychological symptoms, *Erie Bolt* does not compel a reversal.

*Haddon Craftsmen,* 809 A.2d at 441. Although Dr. Mendel referred to the emotional stress of a police officer's job, there is no question that his testimony was that the physical activities involved in Curren's work triggered individual episodes of angina and contributed to the acceleration of his coronary artery disease. The issue is not, as the City seems to argue, whether the Board's findings are supported, but rather whether the WCJ's findings are

supported. In this case two WCJs made essentially the same findings based upon credited medical evidence. The Board erred in insisting that the WCJs analyze the case under *Davis* when Curren did not claim psychic injury and when credited medical evidence established physical work activities as a significant contributing factor in the acceleration of a physical injury of coronary artery disease. *Haddon Craftsmen.*

## II

 In the consolidated matter at No. 1045 C.D. 2004, Curren petitions for review of an order of the Board that affirmed the order of WCJ Lorine dismissing Curren's penalty petition. Curren filed his penalty petition in June 2002 alleging that the City violated provisions of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, 77 P.S. §§ 1—1041.4, 2501—2626, by failing to pay compensation to him based upon WCJ Makin's December 17, 2001 decision. The parties presented a stipulation at the hearing, which specified that in March 2000 WCJ Joseph A. Stokes granted the City's modification/suspension petition in regard to Curren's claim for compensation benefits for his back injury as of April 15, 1994, based upon his receipt of pension disability benefits. That decision was affirmed. *Curren v. Workers' Compensation Appeal Board (City of Chester)* (Pa.Cmwlth., No. 2261 C.D. 2001, filed July 17, 2002) (holding that disability pension paid by City was in lieu of compensation benefits and greater than amount due and that City was entitled to full credit for compensation benefits owed).

The stipulation further set forth the history of Curren's claim petition for chest pains and coronary artery disease, including the denial of the City's request for supersedeas following WCJ Makin's deci-

sion through the Board's October 2002 order vacating WCJ Makin's order and remanding. WCJ Lorine concluded that Curren failed to show by a preponderance of the evidence that the City violated the Act. On appeal, the Board stated that although the City appealed WCJ Makin's order and no supersedeas was granted, the Board thereafter vacated the order. Thus the WCJ did not abuse his discretion in failing to award a penalty.

Curren argues that the Court has held that a defendant violates the Act where it fails to pay compensation after its petition for supersedeas is denied, even though the defendant ultimately prevails on the merits. *Graves v. Workmen's Compensation Appeal Board (LaFrance Corp.)*, 680 A.2d 49 (Pa.Cmwlth.1996). He asserts that once supersedeas was denied on January 18, 2002, he became entitled to receive compensation benefits from April 15, 1994 until October 28, 2002, when the Board vacated WCJ Makin's decision. The City cites the principle that imposition of a penalty under the Act is at the discretion of the WCJ and is not required, even if a violation is apparent on the record, *Candito v. Workers' Compensation Appeal Board (City of Philadelphia)*, 785 A.2d 1106 (Pa.Cmwlth.2001), and it maintains that no violation occurred because it was never obligated to pay benefits under WCJ Makin's decision. The Court fully agrees with the City because WCJ Makin's decision stated that the obligation to pay compensation for Curren's cardiac condition should not begin until the other compensation ends or is reduced. The other compensation was suspended in view of Curren's receipt of the disability pension. Hence, Curren failed to establish a violation of the Act.

In conclusion, the Court reverses the order of the Board on appeal at No. 1046 C.D. 2004, which denied Curren's claim petition alleging work-related chest pains and coronary artery disease. However, the Court affirms the order on appeal at No. 1045 C.D. 2004, which denied Curren's penalty petition claiming that the City violated the Act where it failed to pay Curren benefits from April 15, 1994 until October 28, 2002 when the Board vacated WCJ Makin's decision.

### *ORDER*

AND NOW, this 21st day of December, 2004, the order of the Workers' Compensation Appeal Board in No. 1046 C.D. 2004 denying John Curren's claim petition is reversed, and the decision of the Workers' Compensation Judge is reinstated. The order of the Board in No. 1045 C.D. 2004 denying Curren's penalty petition is affirmed.